IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

JOAN MASAITIS, et al.,           )
                                 )
            Plaintiffs,          )
                                 )
        v.                       )           Civil Case No.: GLS-18-3388
                                 )
MARRIOTT INTERNATIONAL, INC.,    )
                                 )
            Defendant.           )
_____  )

## MEMORANDUM OPINION

Presently pending before this Court is a "Motion to Dismiss" ("the Motion") filed by Defendant Marriott International Inc. ("Marriott" or "Defendant"). Following a hearing and limited discovery, this Motion has now been fully briefed. (ECF Nos. 45, 48, 51, 53, 54, 63, 66, 67, 68)[1]. The Court has reviewed all of the submissions and the relevant case law, and finds that no further hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth herein, Defendant's Motion to Dismiss is **GRANTED**, as set forth herein.

I.      BACKGROUND

A.  The Complaint

On or about April 8, 2018, Plaintiffs Joan and Edward Masaitis ("the Masaitises" or "Plaintiffs") were guests at a property called the J.W. Marriott Guanacaste Resort located in Guanacaste, Costa Rica (the "Resort"). (ECF Nos. 1-2, ¶ ¶ 6, 12). While at the Resort, Mrs. Masaitis slipped and fell on the pool deck. (Id. at ¶ 12). In falling, Mrs. Masaitis sustained personal injuries including a fractured femur requiring surgery or a hip fracture necessitating substantive medical treatment in this United States. *Compare* ECF No. 1-2, ¶ 13, *with* ECF No. 48-2 (Affidavit

_____

[1] As articulated in Section II.C., part of the motion is treated as a motion for summary judgment.

of Joan M. Masaitis).

Plaintiffs' Complaint alleges that Marriott owed certain duties to Mrs. Masaitis, which it breached.  Specifically, Plaintiffs allege that Defendant breached its duties to safely maintain the Resort's premises and/or to warn her of dangerous conditions by failing to: "install warning signs around the pool; implement a standard cleaning schedule for the floors; establish uniform standards for the maintenance or hazard identifications of its resorts consistent with best practices of similar resorts; and failing to inspect and maintain area (sic) where plaintiff fell, the exercise of which would have revealed a hazardous condition."  (ECF No. 1-2, ¶¶ 14-16).  According to Plaintiffs, allowing these defective conditions to be created or remain was "extremely dangerous."  (*Id.*, at ¶ 17).  Count I of the Complaint alleges a direct liability theory of negligence.  Counts II and III allege a vicarious liability theory of negligence, with Defendant as a principal or apparent principal to the "Resort," its agent), and Count IV alleges a vicarious liability theory for the negligence of Marriott and its "co-venturer," the Resort.  (*Id.*, at ¶¶ 14-42).

Mrs. Masaitis seeks damages for medical expenses, permanent injury, lost wages, pain and suffering, and loss of enjoyment of life. Mr. Masaitis seeks loss of consortium damages. *Id*.

### B.  Procedural History

Initially, on or about September 11, 2018, Plaintiffs filed a Complaint in state court in their home state, namely, in the 17th Judicial Circuit located in Broward County, Florida against Marriott International, Inc.  (ECF No. 1-2).  On October 12, 2018, Marriott, which is incorporated under Delaware law and maintains its headquarters in Bethesda, Maryland, removed the case from state court to the U.S. District Court for the Southern District of Florida based on diversity jurisdiction.  (ECF Nos. 1; 5, ¶ 3; 45-1, p. 2).  Marriott then moved to dismiss the Complaint "for lack of personal jurisdiction and . . . under the doctrine of forum non conveniens."  (ECF No. 8, p.

1).  Shortly thereafter, Plaintiffs filed an "Unopposed Motion to Transfer Venue," conceding that the U.S. District Court for the Southern District of Florida lacked the requisite personal jurisdiction over Marriott.  (ECF No. 9, ¶ 4).  Both parties requested that the case be transferred to Maryland, where Marriott maintains its principal place of business.  (ECF No. 9, ¶ 4).[2]

On November 19, 2018, Marriott filed a notice of intent to file a motion to dismiss, predicated upon the doctrine of *forum non conveniens*, arguing that Costa Rica is the adequate and alternative forum to litigate the underlying dispute, and also that Plaintiffs failed to join an indispensable party.  (ECF No. 18).  A case management conference was held whereby the parties agreed to pursue mediation with a United States Magistrate Judge and that case was stayed pending the outcome.  (ECF Nos. 27, 38).  The scheduled mediation was cancelled for reasons that remain unknown to this Court.  (ECF Nos. 27, 39).  It was between this period of time that the case was reassigned, with the parties' consent, to this judge.  (ECF No. 31).  This Court conducted a status conference with the parties and the parties were directed to meet and confer regarding pre-motion discovery on the issue of *forum non conveniens* prior to Marriott filing its motion.  (ECF No. 42).  Thereafter, Marriott filed its "Motion to Dismiss," ("Motion"), asserting Fed. R. Civ. P. 12(b)(6), 12(b)(7), and *forum non conveniens* as its bases for dismissal.  Plaintiffs' opposed the Motion, Marriott filed a Reply, which was followed by Plaintiffs motion for leave to file surreply and to conduct limited discovery.  Marriott opposed the surreply motion, and Plaintiffs filed a reply to that opposition.  (ECF Nos. 48, 51, 53, 54, 55).  In its pleadings, the Defendant has consistently maintained that it is neither the owner nor the operator of the Resort, and that it is the franchisor of the hotel brand used by the Resort's operator to "conduct its business." (ECF No. 45-1, p. 18).

---

[2] Defendant Marriott's motion to dismiss for lack of jurisdiction and forum non conveniens was denied as moot by the Honorable William P. Dimitrouleas, and the court subsequently granted the unopposed motion to transfer the case to this Court. (ECF No. 10).

On September 5, 2019, this Court subsequently conducted a motions hearing.  (ECF No. 59).  At the conclusion of the hearing, the Court held in abeyance its decision regarding the Motion to Dismiss, and  granted Plaintiffs' motion to file a surreply and to conduct limited discovery.  The Court permitted the parties to engage in limited discovery: (1) on the nature of Marriott International's relationship with the non-parties: Resort Owner, Hacienda Pinilla – Grupo Real Trust, and Resort Operator, Hotel Real de Pinilla, S.A.; and (2) related to public and private interest factors (forum non conveniens) as they pertain to Dennis Jaen, Sergio Flores, Diany Vidaurre, Tomas Arias, and Dr. Jeffry Jimenez.  (ECF No. 60).

The parties timely completed some of the limited discovery contemplated by the Order.  Thereafter, Plaintiffs filed a "Sur-reply and Additional Briefing in Opposition to Defendant's Motion to Dismiss," to which Defendant filed a "Supplemental Memorandum in Support of Motion to Dismiss."  (ECF Nos. 63, 66).  In July 2020, Plaintiffs filed a "Notice of Filing Supplemental Authority," to which Defendant filed a response. (ECF Nos. 67, 68).

### C.  Materials Submitted

#### 1.  Declarations and Affidavit

Seven declarations and one affidavit were submitted in connection with the Motion.

Defendant included five declarations in support of the Motion:

- The declaration of Bancroft Gordon, Corporate Secretary for Marriott, International, Inc.  His declaration generally describes the relationship between Marriott and the Resort's Owner, Hacienda Pinilla – Grupo Real Trust, and between Marriott and the Resort's Operator, Hotel Real de Pinilla, S.A.  (ECF No. 45-2).

- Declarations of Manuel Antonio Gonzalez, a Costa Rican lawyer, acting as a

legal expert.  In his declarations, he opines on the Costa Rican legal system and the availability and adequacy of Costa Rican as a forum in the case of *McLane v. Marriott, Int'l, Inc.*, a case in Federal District Court in Florida where those Plaintiffs conceded Costa Rica was a legally adequate forum);  (ECF Nos. 45-2 through 45-4).

- Declaration of  Dennis Jaen, the Supervisor of Loss Prevention at the Resort. In his declaration, he stated that he was employed and supervised by the Operator and its employees.  He also described working the day of the incident, and represented that the following Resort employees, who were Costa Rican citizens and residents, were present on April 8, 2018: Sergio Flores, Diany Vidaurre, and Tomas Arias.  Mr. Jaen also declared that Dr. Jeffry Jimenez, also a citizen and resident of Costa Rica, purportedly rendered medical assistance to Mrs. Masaitis.  (ECF No. 51-2).

- Declaration of Alonso Vargas Araya, a Costa Rican lawyer and public notary, acting as a legal expert.  He opines on private franchise contracts in Costa Rica, and how they relate to the capacity of a provider of goods or services to be sued by a consumer of the same.  (ECF No. 51-1).

Plaintiffs included one affidavit and two declarations in support of their opposition to the Motion:

- Affidavit of Joan Masaitis, a named plaintiff.  Her affidavit briefly describes the incident and medical care she received in Florida. The affidavit also generally states that she does not "expec[t] that either her treating physicians or rehabilitation providers will travel to Costa Rica on my behalf to present

testimony and records concerning her injuries."  She also generally identifies someone named Dean Behrens as a witness, and states that she "does not anticipate that [he would] willingly agree to travel to Costa Rica to testify on my behalf."  (ECF No. 48-2).

- Declarations of declarations of Hernando Paris, a Costa Rican attorney and former magistrate, acting as a legal expert.  He opines on: whether a victim who suffers injury at a "commercial location" is required to file suit against all companies that are "related to" that location; the concurrent or independent civil liability of all entities involved in an incident affecting a consumer/victim who sustained injury at the location; the law on damages and damages "that are subject to indemnification;" and strict liability.  (ECF Nos. 48-4, 63-5).

2.  <u>Additional Documentation Initially Submitted</u>

The following two legal documents were submitted by Defendant and Plaintiff, respectively:

- A document called "Country Reports on Human Rights Practices for 2018, Costa Rica," issued by the U.S. Department of State.  This document describes the Costa Rican judicial system.  (ECF No. 45-5).

- The Hague Evidence Convention, which sets forth the  means by which the parties can request a Costa Rican court's assistance in gathering evidence, including documents and deposition testimony.  (ECF No. 48-3).

3.  <u>Materials Submitted After Limited Discovery Conducted</u>

The limited discovery period having ended, the parties only submitted the following to the Court as part of their supplemental briefing:

6

- "Defendant's Answers to Plaintiffs' First Interrogatories" (ECF No. 63-2, pp. 2-9);

- "Defendant's Responses to Plaintiff's (sic) First for Request for Production" (ECF No. 63-2, pp. 11-23); and

- A deposition transcript for the Fed. R. Civ. P. 30(b)(6) deposition of Ms. Marilla Pergola, Senior Director, Franchise Operations for Caribbean/Latin America. Appended to Ms. Pergola's deposition transcript is "Marriott International Franchise Agreement Between Marriott Worldwide Corporation (Franchisor) and Hotel Real de Pinilla, S.A. (Franchisee)" (ECF No. 63-4).

## II.  DISCUSSION

### A.  Motion to Dismiss: Forum Non Conveniens

The Defendant first seeks dismissal of the Complaint under the doctrine of *forum non conveniens*.  In particular, the Defendant argues that Costa Rica is an available and adequate forum. Next, Defendant avers that Costa Rica is a more convenient forum to resolve Plaintiffs' claims.  In opposing the Motion, Plaintiffs concede that Costa Rica is an available and adequate forum. However, they also contend that they are entitled to great deference in their chosen U.S. forum, and that the Defendant has failed to meet its burden of persuasion in arguing that Costa Rica is a more convenient forum.

#### 1.  Legal Standard

Under the doctrine of *forum non conveniens*, a court may dismiss a case if an alternative foreign forum exits in which that case may be litigated.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  The primary focus of the *forum non conveniens* inquiry is convenience.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 (1981).

When considering a motion predicated on this doctrine, a court must determine that: (1) the alternative forum is available to the plaintiff; (2) the alternative forum is adequate; and (3) the alternative forum is more convenient in light of the public and private interests involved. *Jiali Tang v. Synutra Intern., Inc.*, No. DKC-09-0088, 2010 WL 1375373, at *5 (D.Md. Mar. 29, 2010) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430) *aff'd sub nom Jiali Tang*, 656 F.3d 242 (4th Cir. 2011).   Here, the defendant bears the burden of demonstrating availability, adequacy, and the convenience of an alternative forum. *DiFederico v. Marriott Int'l Inc.*, 714 F.3d 796, 800-01 (4th Cir. 2010).

### 2. Availability and Adequacy Satisfied

Because the Plaintiffs concede that Costa Rica is an available and adequate forum, ECF No. 48, the Court finds that Marriott has met its burden on the first two elements articulated in *Jiali Tang*.

### 3. Convenience of Alternative Forum

Under *Jiali Tang*, the Court must also decide whether Costa Rica is a more convenient forum by analyzing the pertinent private and public interest factors.  If after balancing these interests the Court decides that Costa Rica is more convenient, dismissal of this case is required. *Jiali Tang*, *supra*, 656 F.3d  at 248.

The court should first consider a plaintiff's choice of forum.  *DiFederico,* 714 F.3d at 802-03.

Next, a court considers the private interests of the litigants. In doing so, a court is to consider the following: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) possibility of view of premises, if view would be appropriate to the action;

and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Piper Aircraft*, 454 U.S. at 241 n.6.

### a. Plaintiffs' Choice of Forum

When a court considers a motion to dismiss under the doctrine involving a citizen plaintiff, the court must be aware that the "choice of forum is entitled to greater deference when the plaintiff [chooses] the home forum," to bring forth their claims. *Piper Aircraft*, 454 U.S. at 255-56. Plaintiffs are American citizens, so their home forum is "any federal district court" in the United States. *DiFederico*, 714 F.3d at 803 n.4. In addition, because "a citizen plaintiff's choice is presumptively convenient," it should only be "overridden only when the defendant 'establish[es] such oppressiveness and vexation . . . as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent.'" *DiFederico*, 714 F.3d at 802-03 (quoting *Koster v. (American) Lumbermens Mut. Cas. Co*., 330 U.S. 518, 524 (1974)). This presumption, however, only attaches if there is a "**real** showing of convenience" by a plaintiff. Under that circumstance, such a showing is normally sufficient "[to outweigh] the inconvenience the defendant may have shown." *Id.* at 803(emphasis supplied).

Here, Plaintiffs, who are American citizens, initially filed suit in state court in Florida, their home forum. Subsequently, Marriott removed this case to federal court in Florida. Thereafter, when Marriott contested personal jurisdiction, Plaintiffs and Defendant agreed to the transfer of this case to the U.S. District Court for the District of Maryland. Marriott maintains its principal place of business in this District. Thus, at first blush, the Court's analysis of the facts suggests that Plaintiff's choice of this forum is entitled to the highest level of deference under *DiFederico*. However, as set forth more fully below, Plaintiffs have not made a real showing of convenience in the present forum.

*b. Sources of Proof*

To understand the ease of access to sources of proof, a court "must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

Here, the Plaintiffs allege that Marriott is directly liable or vicariously liable for the injuries Mrs. Masaitis sustained when she slipped and fell on the pool deck at the Resort.  Specifically, Marriott was negligent in that it breached its duties of care to Resort invitees by failing to: post warning signs around the pool, implement a standard cleaning schedule of the area, establish uniform standards for the maintenance of the area, and inspect and maintain the area.  To establish liability, then, Plaintiffs will, as a threshold matter, have to develop the facts: surrounding the incident; the condition of the pool area; whether any Resort employees knew of those conditions (both at the time of the incident or before the incident); and whether the employees acted or failed to act in the face of that knowledge.  To compute damages, also relevant are the extent of Mrs. Masaitis' injuries and whether she received any treatment for them in Costa Rica.  Accordingly, all of the principally relevant facts revolve around what happened or did not happen in Costa Rica. At minimum, then, understanding the conduct of the Operator's employees is material to any determination of liability. [3]

As to written sources of proof,  Marriott's written discovery responses show that it neither

---

[3] The Court recognizes that this analysis related to the elements of negligence under Maryland law. Neither party's expert clearly articulated whether Costa Rica's law on negligence-premises liability has the same or different elements. However, both parties' experts appear to agree that Plaintiffs must show a tort occurred and that Defendant's conduct/lack of conduct bears some involvement or connection to that harm. Thus, the Court believes that its view of the necessary facts is correct.

owns nor operates the Resort.  The Gordon Declaration and Ms. Pergola's testimony establish that Marriott does not have any employees at the Resort.  In addition, the Defendant's written discovery responses state that it lacks information about the Resort's daily operations.  Marriott further denies having any responsive documents or information in its possession related to the circumstances surrounding Mrs. Masaitis' injuries and the medical assistance or treatment rendered in Costa Rica. Ms. Pergola testified that if the franchisee-Operator generated an incident report, it was not required to share the same with Marriott.  Moreover, with respect to any documents relevant to, e.g., the identity of employees and their training and/or the safety or maintenance of the property, there is no evidence that Marriott has such information.  The reasonable inference is that if these documents do exist, they exist in Costa Rica. Regarding treatment of her injury, the only clear credible reference to medical care comes from Mrs. Masaitis, who states in her affidavit that she received treatment in Florida.  Thus, it appears that the majority of the relevant documentary evidence is located in a foreign forum, not in Maryland where Marriott is located.  To obtain such documents would require use of letters rogatory or attempts to obtain evidence via the Hague Convention.

Even though Ms. Pergola testified that she did know whether any documents maintained by the Resort would be unavailable to Marriott if the case were to proceed in this court, on balance, the Court finds that all facts present support the conclusion that Costa Rica is the convenient forum.

### c. Witnesses

As stated previously, given the nature of this action, witnesses to the incident and employees of the Resort are material to determining liability.  Ms. Pergola testified that Marriott does not have any employees or other personnel at the Costa Rican Resort. Based on the evidence before the Court, it appears as though individuals who do not work for Marriott, i.e., Resort

employees, are responsible for the daily operations of the resort, to include maintenance. In addition, any Resort employee-eyewitnesses to the incident are not Marriott employees, and likely are foreign. The same is true of any medical first responders to the incident. Foreign witnesses cannot be compelled to testify in this Court.

Ms. Pergola did testify that she did not know whether any foreign witnesses would be unavailable to the Defendant if this case were to move forward in Maryland, and Marriott did not put any evidence before this Court about the cost of obtaining the attendance of these foreign witnesses. Thus, Marriott has potentially, but not conclusively, identified possible obstacles to procuring foreign witnesses, were they identified to exist.

While the Defendant clearly bears the burden of demonstrating a witness' convenience to a particular forum, the Court cannot ignore the procedural posture of this case. Despite permitting limited discovery for the parties to obtain additional information about potential witnesses, there is no evidence before me that any effort was made to depose Dennis Jaen, the Resort's Loss Prevention Supervisor, who stated in his declaration that he responded to the scene after the accident, and identified three Resort employees as potential witnesses.[4] Similarly, it does not appear that any effort was made to further identify or depose Sergio Flores, Diany Vidaurre, Tomas Arias, and Dr. Jeffry Jimenez, who were ostensibly identified as witnesses to the event. Regarding the sole witness offered by the Plaintiff, Dean Behrens, there is no information in front of this Court about: his full identify (e.g., citizenship, address); what he allegedly witnessed on April 18, 2018; and his willingness to testify either here or abroad. It is unclear why the Plaintiffs did not

---

[4] As an initial matter, the Court did review his declaration, but did not rely upon it in making a final determination of any of the issues presented. The Court notes that Defendant Marriott maintains that Mr. Jaen is not a Marriott employee, and that he is employed by the Resort's Operator. It is not lost on the Court that despite these facts, Marriott was able to somehow able to obtain a declaration from Mr. Jaen, a person with whom it claims to have no relationship. *See* ECF No. 51-2. In addition, Marriott relies upon his declaration in its *forum non conveniens* argument, implying that all of the possible known witnesses to the incident are likely residents of Costa Rica. Recognizing the irony, the Court did not rely upon the declaration.

avail themselves of the Court's Order permitting further develop of the facts of this case related to Flores, Vidaurre, Arias, or Jimenez.

On this less-than-ideal record, the Court finds that this private factor slants towards Costa Rica as the convenient forum.

### d. View of the Premises

A trial in federal district court in Maryland means that a view of the Costa Rican premises is not feasible. And, there is no evidence before this Court regarding the existence of video footage or photographs, such that a view of the premises would be unnecessary. Relatedly, Ms. Pergola testified that she did not know whether the Defendant would be able to photograph or videotape the property. Thus, this factor also weighs in favor of the Costa Rican forum.

### e. Other Factors

The Court also considered the fact that Marriott has consented to litigate this matter in Costa Rica.[5] Next, it is not entirely clear that the Masaitises would be inconvenienced by the case proceeding in Costa Rica, as the law there might permit the presentation of evidence in writing. *See* ECF 45-4. *McLane v. Marriott Int'l, Inc.*, 960 F.Supp.2d 1351, 1358 (S.D. Fla.), *aff'd*, 547 F.App'x 950 (11th Cir. 2013). In sum, the private interest factors point towards Costa Rica is a more convenient forum.

### 4. Convenience of Alternative Forum: Public Interest Factors

The public interest factors are: (1) administrative difficulties flowing from court congestion; (2) the local interest in having "localized controversies decided at home;" (3) interest of trying cases in a forum that is familiar with the law governing the action; (4) avoidance of unnecessary problems in the application of foreign law or conflicts of law; and (5) unnecessarily

---

[5] *See* ECF Nos. 45, 51.

burdening the community in an unrelated forum with jury duty. *Jiali Tang*, 656 F.3d at 249 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

Analyzing these factors, Defendant does not persuade this Court that court congestion favors Costa Rica over this forum.  Next, there is some "local" interest in having "localized controversies decided at home" for two reasons.  First, it is of note that Plaintiffs originally sued Marriott in state court in Florida, then Marriott removed this action to federal court in Florida, and later both parties requested that the case be transferred to federal court in Maryland, a state where Marriott is headquartered.  Thus, the reason that the case is in this district is because Marriott consented to it being here.  Second, the Complaint alleges that the Masaitises chose to stay at the Resort because they believed that it met with the Defendants' "brand standards of quality and safety," and "had all of the appearance [of being a J.W. Marriott branded resort]."  As Americans who relied upon that brand, the Masaitises had an interest in "resolving a dispute related to Marriott." *DiFederico*, 714 F.3d at 807.  On the other side of the ledger weighing against this local interest is the fact that the injury to Mrs. Masaitis is likely caused by the acts or omissions of employees of a foreign entity in a foreign land, not by Marriott employees.

Regarding the law to be applied, because Plaintiff's injuries allegedly as a result of a tort that occurred in a foreign country, "Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti commissi*, or the law of the place of the harm to determine the applicable substantive law." *Wells v. Liddy*, 186 F.3d 505, 524 (4th Cir. 1999).  Thus, this Court would have to apply Costa Rica's law on negligence (premises liability), vicarious liability, and agency(to the extent such concepts exist). This District is not "at home" with Costa Rican law. *Piper*, *supra*, at 241 n.6.  Here, both parties have submitted declarations from "experts" in Costa Rican law.  The declarations selectively offer some aspects of the law on liability but do not clearly address other

14

aspects of the law (e.g., agency law).  Moreover, parts of the declarations appear at odds with each

other.  For instance, the declarations submitted by Plaintiffs' expert  appear to imply that Marriott

could be strictly liable for "the consequences flowing from an activity," while also stating that

"Plaintiff only needs to prove that the tort occurred and that the defendant was responsible."  The

declarations submitted by Marriott provide that "only a party which proves that it is uninvolved in

the harm will be release," and that some Costa Rican tribunals have found direct or indirect civil

liability against a franchisee, not a franchisor.  Neither party's declarations appear to be precisely

tailored to the specific facts at issue here.  *See* ECF Nos. 45-3, 48-4, 51-1, 63-5.  In addition, none

of the declarations submitted clearly address principles of agency (actual or apparent), nor offers

a fulsome discussion on the liability of an owner rather than an operator.  While federal courts

remain fully capable of interpreting and applying foreign law, *Di Federico*, 714 F.3d at 808, the

burden and difficulty in applying foreign law on the specific the facts of this case, weigh in favor

of Marriott.

In sum, analyzing all of the private and public factors together, Costa Rica is really the

more convenient forum.  Marriott has met its burden.  The Motion based on *forum non conveniens*

is GRANTED.

### B.  Fed. R. Civ. P. 12(b)(7) – Failure to Join a Party

Marriott also seeks to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(7) for failure

to join an indispensable party.  Marriott avers that "this case should not proceed without the owner

and operators," because it is their conduct that forms the basis of liability in this case.  As such,

they are "indispensable parties."  *See*  ECF No. 66, p. 12.

#### 1.  Standard of Review

Rule 12(b)(7) permits a party to file a motion to dismiss for failure to join a party to the

original action pursuant to Fed. R. Civ. P. 19. *R-Delight Holding LLC v.* Anders, 246 F.R.D. 496, 498 (D. Md. 2007).  In determining whether dismissal is appropriate, a court first examines whether a party is "necessary." *See Owens-Illinois*, *Inc. v. Meade*, 186 F.3d 435, 440-41 (4th Cir. 1999); *Warhorse-Baltimore Real Estate, LLC v. Fore*, 296 F.R.D. 396, 399 (D. Md. 2013).  A party is deemed "necessary" and "must be joined" if  that party "is subject to service of process," **and** its "joinder will not deprive the court of subject-matter jurisdiction," **and** "in that person's absence, the court cannot accord complete relief among the existing parties," **or** in continuing the action, "that person claims an interest relating to the subject of the action is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1) (emphasis supplied).  It is only if those elements are satisfied, i.e., if a party is "necessary," but that party "cannot be joined," that this court must then "consider whether the party is indispensable pursuant to Rule 19(b) such that the case must be dismissed." *Letren v. Wells Fargo Bank, N.A.*, Civ. No. PWG 15-614, 2016 WL 560801, *6 (D. Md. Feb. 12, 2016)(citing *Owens-Illinois*, 186 F.3d at 440).  In addition, "a party cannot be indispensable unless it is necessary, but not all necessary parties are indispensable." *Chattery Intern, Inc.*, Civ. No. WDQ 10-2236, 2012 WL 1454158, *7 (D. Md. Apr. 24, 2012)(citing *Schlumberger Indus. V. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285-86 (4th Cir. 1996)).

Although dismissal of a matter pursuant to Rule 12(b)(7) is within the court's discretion, "[d]ismissal of a case for nonjoinder . . . is a drastic remedy and should be employed sparingly." *Fore*, 296 F.R.D at 399.  The moving party has the burden to show that dismissal is the most appropriate remedy. *Id*.

2.   <u>Analysis</u>

As Plaintiffs have correctly stated, the underlying dispute is a personal injury tort claim. This Court has already found that, at minimum, the facts related to the conduct of the Operator's employee are key in this action.  However, as the Court stated earlier, what is not clear from the evidence submitted is whether Marriott, as a franchisor, could also be liable under the specific facts of this case.  What is clear is that the Resort's Owner and Operator are foreign entities who are not subject to service of process.  As is pertinent here, the language in Rule 19(a)(1) only requires joinder of the Owner and/or the Operator if: (a) either of them is subject to service of process **and** (b) joining them would not deprive the court of subject matter jurisdiction. Both of those prerequisites  must be met before a court analyzes whether in that party's absence, complete relief can be accorded.  *Letren*, 2016 WL 560801, *6.  Under this analysis, neither the Owner nor the Operator would be "necessary," thus they cannot be indispensable.  *Schlumberger*, *supra*, 36 F.3d at 1285-86.

The cases cited by Marriott are readily distinguishable.  For instance, none of the cases involved non-joined entities who were not subject to service of process.  *See Schlumberger*, *supra*, 36 F.3d at 1285 (non-joined entity subject to service of process, however, joinder of non-party would destroy diversity jurisdiction and leave court without subject matter jurisdiction); *Warhorse-Baltimore Real Estate, LLC v. Fore*, *supra*, 296 F.R.D. at 399-400 (Under Rule 19(a), non-joined entity was subject to service of process and joining it would not have destroyed subject matter jurisdiction); *McGovern v. Deutsche Post Global Mail, Ltd.*, Civ. No. JFM-04-0060, 2004 WL 1764088 (D. Md. Aug. 4, 2004)(Under Rule 19(a), non-party was a Delaware entity subject to services of process, however joining it would destroy diversity jurisdiction. Rule 19(b) analysis was therefore appropriate).

17

Moreover, the fact that the Defendant and the Resort's Operator have a franchisor-franchisee agreement that includes an indemnification clause does not change this Court's analysis. That Franchise Agreement also provides for mandatory arbitration to occur in a tribunal other than this Court to resolve any dispute between the franchisor and franchisee, including related to "any condition, occurrence or activity at the Hotel." *See* ECF No. 63-4, pp. 134, 140. Even in the absence of the Operator from this action, this Court cannot accord complete relief to Marriott.

In sum, this Court does not find that the Resort Owner or Operator are necessary parties under Rule 19(a). The Court need not analyze whether the parties are "indispensable" under Rule 19(b). Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(7) is DENIED.

### C.  Motion to Dismiss/Motion for Summary Judgment

Plaintiffs allege in the Complaint that Marriott is liable based on a theory of actual agency, apparent agency, or based on the notion that Marriott is in a joint venture with the Owner and Operator of the Resort. (ECF No. 1). Defendant contends that the discovery conducted confirms that its subsidiary is in a franchisor-franchisee relationship with the Resort's Operator, and that under Costa Rican law Marriott "is not the proper party to sue." Relatedly, Marriott avers that Plaintiffs "are unable to establish that [it] caused Plaintiffs' alleged injuries." (ECF No. 66, pp. 14-15).

#### 1. Standard of Review

Part of Defendant's motion to dismiss is predicated upon Fed. R. Civ. P. 12(b)(6), or in the alternative upon Fed. R. Civ. P. 56, for summary judgment. Such a motion implicates this Court's discretion under Fed. R. Civ. P. 12(d). *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F.Supp. 2d 431, 436-37 (D. Md. 2011). Normally, when a motion to dismiss has been filed, a court "is not to consider matters outside of the pleadings or resolve factual disputes." *Bosinger v.*

*U.S. Airways*, 510 F.3d. 442, 450 (4th Cir. 2007).  A court may, however, exercise its discretion and consider matters outside of the pleadings, which requires it to treat the motion as one for summary judgment.  Under that scenario, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 Fed App'x. 220 (4th Cir. 2016)(per curiam).

In this case, the Court permitted additional discovery, which has been completed.  Plaintiff was given ample opportunity to seek as much additional discovery as necessary on the nature of the relationship between Marriott and the Owner and/or the Operator, as well as regarding the five individuals suggested as possible witnesses to the events surrounding the April 18, 2018 incident. Ultimately, however, Plaintiffs only obtained: "Defendant's Answers to Plaintiffs' First Interrogatories," "Defendant's Responses to Plaintiff's (sic) First for Request for Production," the Rule 30(b)(6) deposition of Ms. Marilla Pergola, Senior Director, Franchise Operations for Caribbean/Latin America, and the Franchise Agreement between Marriott Worldwide Corporation and the Operator of the Resort.  In addition, both parties have filed supplemental briefing following the close of discovery.  Thus, the Court is satisfied that it is appropriate to address part of Defendant's motion as one for summary judgment.

Summary judgment is appropriate only if, when viewing the evidence in the light most favorable to the non-moving party, no genuine issues of material fact exist such that the moving party is entitled to judgment as a matter of law.  *Celotex Cororp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Iraq Middle Mkt. Dev. Found. V. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  In addition, this does not mean that any factual dispute will defeat a summary judgment motion. Rather, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Moreover, the party opposing summary judgment "may

not rest upon the mere allegations or denials of [its] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003)(citation omitted).

Furthermore, a court, when viewing the evidence in the light most favorable to the non-movant, must "draw all reasonable inferences in [a non-movant's favor] without weighing the evidence or  assessing [a witness'] credibility. *Dennis v. Columbia Collection Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).  This Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.  In other words, this court may not decide which witness is more credible when faced with a summary judgment motion.  *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018).

### 2. Marriott International's Relationship to the Resort and its Owner and Operator

The Court has analyzed all of the evidence submitted.

In his declaration, Bancroft Gordon states that the Defendant was not the owner, developer, or operator of the Resort.  Hacienda Pinilla – Grupo Real Trust is the Owner of the Resort, and is a Costa Rican entity.  The Resort's Operator, Hotel Real de Pinilla, S.A, is a subsidiary of a Salvadorean company.   In addition, Marriott has a franchisor-franchisee agreement with the Operator, but does not have an ownership interest in the Resort or any kind of agreement with the Owner.  Moreover, Gordon declares "Marriott International, Inc. does not control and does not have the right to control the Owner or the Operator in the execution of their duties at the Resort." (ECF No. 45-2).

There was no testimony elicited from Ms. Pergola or anyone about the relationship between Marriott and the Owner.

Marilia Pergola testified to the following.  First, that Marriott Worldwide Corporation has a franchisor-franchisee agreement with Operator of the Resort. She also stated that Defendant Marriott is the parent of Marriott Worldwide. During her deposition, she was shown the "Marriott International Franchise Agreement Between Marriott Worldwide Corporation (Franchisor) and Hotel Real de Pinilla, S.A. (Franchisee)."  (ECF Nos. 63-4, 63-5).  Per Ms. Pergola's testimony and the Franchise Agreement, the franchisee makes monthly fee payments to Marriott regarding the reservation system, training program ("core  management training"), and other factors.  In addition, the Franchise Agreement also generally  refers to staffing and training the Resort, which are required to be consistent with undefined "Standards" developed by Marriott.  Second, Pergola testified that Marriott approved of the Operator, based on  qualifications to operate the hotel, including operational experience and managerial skills.  Ms. Pergola testified that the Defendant has no input on who serves as the general manager at the Resort.  That decision is left to the Owner and or Operator of the Resort.  (ECF No. 63-4, p. 20).  Third, limited and somewhat vague testimony[6] was acquired from her regarding a Design Review Agreement, Brand Standards Guide, and some sort of "system for the establishment and operation of a full-service quality tier hotel" that uses Marriott's "proprietary marks."  Her testimony was not fully developed. She seemed to say that the aforementioned documents were drafted by "Marriott" (and/or a third party provider), and the Operator must follow undefined brand standards.  Ms. Pergola testified that "Standards" in the Franchise Agreement signified Marriott's "operating rules, procedures, standard operating procedures, policies, guides, standards, systems, requirements, specifications, and controls."  If the Resort had any additional manuals or standard operating procedures, Marriott lacks knowledge and possession of them. Fourth, Ms. Pergola testified that Marriott does not have any employees

---

[6] When reviewing the transcript, it appears to the Court that the witness may have had linguistic difficulties, and was often not asked to clarify some of her statements.

or other personnel at the Costa Rican resort.  According to the Gordon Declaration, the Defendant does not have any employees or other personnel at the Resort.

No clear or specific testimony about safety and inspections at the resort or about the maintenance of the Resort was obtained from any witness to further explain some very general phrases in the Franchise Agreement.  The Franchise Agreement stipulates that the franchisee is responsible for maintenance of the hotel "in first-class condition and in conformity with [Marriott's] System, [Standards], and all applicable laws and regulations," but there was no testimony about what that means. In addition, the Franchise Agreement generally provides that the franchisee was to make at its "sole cost and expense, all repairs, alterations…replacements to the Hotel."

3. <u>Analysis</u>

The evidence is unrefuted that Marriott's subsidiary has a franchisor-franchisee relationship.  The evidence is also unrefuted that Marriott did not have any employees who worked at or operated the Resort and, therefore, did not directly cause Plaintiff's injuries.  Thus, regarding Counts I (direct liability) and IV (vicarious liability as to Marriott  based on a joint venture), under either Rule 12(b)(6) or Rule 56, dismissal of these counts is required.

Regarding Counts II-III, Plaintiffs argue that Marriott consented to the Resort's Owner and Operator acting as its agents or apparent agents to, e.g., "operate the Resort, conduct inspections of the resort, and ensure compliance with brand standards."  (ECF No. 1, p. 2).

Plaintiffs' theory of liability appears to be that Marriott exercised sufficient control over the Resort's employees that it may be found liable based on the employees' negligence. *Compare Stenlund v. Marriott International, Inc.*, 172 F.Supp.3d 874, 884-86 (D. Md. 2016)(negligence complaint alleged direct liability and vicarious liability based on degree of control Marriott

allegedly exercised over a Panamanian hotel). Under Maryland law, an agency relationship exists if: (1) "the agent is subject to the principal's right of control"; (2) "the agent has a duty to act primarily for the benefit of the principal"; and (3) "the agent holds a power to alter the legal relations of the principal." *Proctor v. Metropolitan Money Store Corp*., 579 F.Supp.2d 724, 735 (D. Md. 2008) (citing *Schear v. Motel Mgmt. Corp*., 61 Md.App. 670, 487 A.2d 1240, 1248 (Md.Ct.App. 1985); *see also* Restatement (Second) of Agency §§ 12-14 (1958). Were this Court to apply Maryland law, I would find that Plaintiffs have failed to establish that Marriott exercised sufficient control over the Resort's Owner or Operator related to the safety, inspection, and maintenance of the pool area. Neither Ms. Pergola's testimony nor any other evidence obtained during the discovery period supports Plaintiffs' agency theory. Construing the evidence in the light most favorable to Plaintiffs, at best, Ms. Pergola testified that: there was a franchisor-franchisee relationship between Marriott and the Operator; the Operator paid fees to Defendant's subsidiary; the Operator was to adhere to some unspecified Marriott brand standards; and the Operator was to maintain the hotel "in first class condition" and make all repairs. None of the facts developed demonstrate that Defendant or its subsidiary exercised control over the relevant areas (safety, inspection, and maintenance of the pool).

Of note is the fact that both parties agree that Costa Rican law likely governs. However, neither party submitted expert testimony on Costa Rica's law regarding agency or apparent agency, or whether these concepts even exist under the law. *Compare Stenlund*, 172 F.Supp.3d at 889 (negligence complaint alleging vicarious liability based on agency, Panamanian law expert explained that the doctrines of actual and apparent agency do not exist). Indeed, the parties have cherrypicked certain facets of Costa Rican law rather than provide comprehensive expert legal testimony on agency. *Compare* ECF Nos. 45-3 and 51-1 with ECF Nos. 48-4 and 63-5. Moreover,

the expert testimony submitted by Plaintiffs conflicts with the expert testimony provided by Defendant.  In light of this credibility contest, a genuine issue for trial exists, and summary judgment is not proper.  *Wilson*, *supra*, 893 F.3d at 218-19.

Accordingly, Defendant's motion to dismiss or, alternatively, for summary judgment, is GRANTED, as to Counts I and IV, and DENIED as to Counts II-III.

## III.    CONCLUSION

In sum, because Defendant has met its burden on *forum non conveniens*.  Defendant's Motion to Dismiss is **GRANTED.**  The Complaint is dismissed.  Clerk of the Court shall close the case.  A separate Order will follow.


Dated:  December 28, 2020                              _____/s/_____
                                                                                    The Honorable Gina L. Simms
                                                                                    United States Magistrate Judge